UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ARNOLD BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-205-TRM-DCP |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion for Protective Order [Doc. 54] and Defendant's Motion for Enforcement of the Trial Witness Disclosure Deadline and Issuance of a Protective Order Quashing Plaintiff's Untimely 30(b)(6) Deposition Notice to Norfolk Southern with Request for Expedited Hearing [Doc. 56]. The parties appeared before the Court on January 8, 2020, for a motion hearing. Attorney Andrew Lampros appeared on behalf of Plaintiff. Attorneys Emily Herman-Thompson, Ronald Wray, and John Baker appeared on behalf of Defendant. Accordingly, for the reasons more fully set forth below, the Court **GRANTS** Defendant's Motion [**Doc. 54**] and **DENIES** Defendant's Motion [**Doc. 56**].

**I.     POSITIONS OF THE PARTIES**

The Court will summarize the motions in the order in which they were filed.

   **A.     Defendant's Motion for Protective Order [Doc. 54]**

Defendant seeks a protective order from having to respond to Plaintiff's additional discovery requests relating to RailView. Defendant explains that the parties have spent thousands

of dollars on discovery relating to various RailView issues, including written discovery, document production, the deposition of Defendant's Manager of the Transportation Data Center (Adam Mastrangelo), and a nearly ten-hour forensic examination of the RailView hard drive and flash card in Roanoke, Virginia, by Plaintiff's experts. Defendant argues that the RailView data has no bearing on the central issues in this case.

Plaintiff insists [Doc. 58] that the most recent discovery requests are narrowly tailored to allow a complete analysis of the RailView data. Plaintiff states that Defendant has made several representations to the Court regarding RailView that are suspect. Plaintiff states that Defendant's employee, Adam Mastrangelo ("Mastrangelo"), developed RailView, which contradicts the representation that it is solely the product of Leidos, Inc., ("Leidos"). Plaintiff argues that Defendant used tax-payer money to equip its locomotives with RailView. In addition, Plaintiff states that Defendant's representation to the Court that the RailView hard drive contained proprietary, human readable software was false. Plaintiff states that after removing the hard drive from the locomotive, Defendant wrote a video file to the hard drive, and therefore, did not preserve the hard drive in the state that it was in at the time of the accident. Plaintiff argues that the facts contradict Leidos's proprietary concerns over RailView. In addition, Plaintiff maintains that Defendant exported the video from the hard drive using some sort of administrative tool and that Plaintiff's latest discovery requests relating to RailView seek documents relating to exporting files. Plaintiff states that the requests seek documents that are supplemental to the hard drive, data, and RailView.

Defendant replies [Doc. 104] that Plaintiff fails to argue that the resolution of any issue relating to RailView is relevant to the matters that are central to the determination of Plaintiff's claim. Defendant maintains that the lead locomotive did not capture the incident at issue.

Defendant disputes the facts about RailView that are outlined in Plaintiff's Response but argues that in any event, Plaintiff's alleged facts have no bearing upon the undisputed fact that there is no video footage of the incident. Defendant argues that Plaintiff's accusation that it made a false representation to the Court on this issue is inappropriate and demonstrably wrong.

    **B.**    **Defendant's Motion for Enforcement of the Trial Witness Disclosure Deadline and Issuance of a Protective Order Quashing Plaintiff's Untimely 30(b)(6) Deposition Notice to Norfolk Southern with Request for Expedited Hearing [Doc. 56]**

In its Motion, Defendant requests that the Court enforce the final witness list deadline imposed within the Amended Scheduling Order and enter a protective order quashing Plaintiff's untimely Rule 30(b)(6) deposition notice. Defendant argues that Plaintiff's attempt to take a Rule 30(b)(6) witness is designed to convert this case into one of strict liability in light of the clear evidence that Plaintiff was contributory negligent. Defendant states that despite countless telephone and written communications about witness depositions, without one word mentioned of a Rule 30(b)(6) witness on rules and regulatory compliance, Plaintiff served a Rule 30(b)(6) notice four days after the final witness deadline had already expired.

Defendant argues that Plaintiff is attempting to unilaterally modify the final witness list deadline without obtaining or seeking Defendant's consent or the Court's permission. Defendant asserts that Plaintiff's Rule 30(b)(6) notice is untimely and part of an ambush tactic. Defendant states that Plaintiff did not identify in his initial disclosures the subject matter that the Rule 30(b)(6) witness should testify, and Plaintiff's silence led Defendant to believe that Plaintiff was not pursuing a negligence per se case. Defendant states that Plaintiff has never supplemented his initial disclosures to identify a corporate witness on the subjects of information he now seeks. Further, Defendant argues that the Rule 30(b)(6) notice is unnecessary because it will be unreasonably cumulative and/or duplicative of prior discovery, and its relevancy is questionable.

Plaintiff responds [Doc. 64] that Defendant has failed to meet its burden. Plaintiff argues that he alleged negligence per se in his Complaint. Further, Plaintiff included a Rule 30(b)(6) witness in his initial disclosures, which were served on July 31, 2018. Plaintiff states that he also included a corporate designee on his final witness list and his supplemental final witness list. Plaintiff states that he is permitted to ask a Rule 30(b)(6) witness about regulatory compliance. In addition, Plaintiff states that the Federal Rules allow discovery to proceed in any sequence and that there is no requirement that a Rule 30(b)(6) notice be served before or after any specific event. Plaintiff states that it is immaterial that other witnesses may have testified on matters related to the Rule 30(b)(6) topic.

Defendant replies [Doc. 67] that it has shown good cause to quash the untimely and unnecessary Rule 30(b)(6) notice and that Plaintiff has provided no reasonable justification for this deposition. Defendant maintains that the Federal Rules have built in judicial discretion, especially when the Court orders a final witness list deadline, which clearly contemplates all witnesses being identified prior to that deadline.

## II. ANALYSIS

The Court will address Defendant's Motions in the order in which they were filed.

### A. Defendant's Motion for Protective Order [Doc. 54]

As mentioned above, Defendant seeks a protective order pursuant to Rule 26(c), protecting it from having to respond to Plaintiff's discovery requests [Doc. 54-4], relating to RailView.

Federal Rule of Civil Procedure 26(c) provides, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Further, "where a party moves for a protective order under Rule 26(c), the burden is on the moving party to show good cause for the issuance of

the protective order." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013).

Rule 26(b) governs the parameters of discovery, which provides, in relevant part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs the case." Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016).

With the above analysis in mind, the Court will turn to the present issue: Plaintiff's additional discovery requests relating to RailView. The Court is familiar with RailView as it has been the subject of several discovery disputes between the parties. In summary, RailView is a digital recording system mounted on the cab of Defendant's locomotive, and the data captured by the RailView system can be viewed with software, which is developed by Leidos. Plaintiff states that his discovery requests "fall squarely within Rule 26 [because] [h]ere, if video captured the incident, that would be highly relevant and important to Plaintiff's claim." [Doc. 58 at 7]. The Court agrees that had the video captured the incident, RailView would be highly relevant in this case. Here, however, there is no genuine dispute that the RailView did not capture the incident. Instead, Plaintiff acknowledged at the hearing that his discovery requests are directed more toward the potential for spoliation of evidence.

The problem with Plaintiff's argument with respect to spoliation involving the RailView data is that he only offers speculation to support it. The Court notes that Plaintiff has already received much discovery regarding RailView. As Defendant has explained, the parties have exchanged documents, and Plaintiff and his experts traveled to Roanoke, Virginia, to image and conduct a forensic analysis of the hard drive and flash card. Plaintiff also took the deposition of Mastrangelo solely to ask about RailView and the data on RailView. Plaintiff now seeks additional discovery, relating to RailView. [Doc. 54-1 at 19]. The Court finds that Defendant has shown good cause for a protective order and that the additional discovery requests are not relevant to the issues in this case.

The incident giving rise to Plaintiff's claim occurred on October 27, 2016. The locomotive was inspected a year prior to the incident, in October 2015, and the inspection showed that the RailView on the locomotive at issue was not functioning properly.[1] [Doc. 54-1 at 18]. During Mastrangelo's deposition, he explained how RailView's hardware worked:

> A. It has two different mediums inside. One is a –is a rotary drive, hard drive. And one is a compact flash card.
>
> Q. And does it record the same information to both the rotary drive and the flash card?
>
> A. Yes. Just one is larger than the other, so one will wrap quicker than the other one will.
>
> Q. What do you mean "wrap?"
>
> A. It works with a circular cue. So new data in, and when it gets to the limit of the drive old data will get rewritten by the newest data. So it will wrap.

---

[1] There were hardware and software issues with the Railview. The hardware issues were fixed prior to the incident, but the software issues were not. Attorney Wray explained at the hearing that the shop does not perform software fixes and that the RailView should have been taken to Leidos at the time the issue was discovered.

[*Id.* at 3]. Further, Mastrangelo testified about the software problem that Defendant experienced with Railview. He stated that when the DVR boots up, its first task is to build directories, but because it was taking too long to build directories (i.e., longer than four minutes), the DVR continued to reboot without capturing any footage. [*Id.* at 9]. The last viewable file on the instant DVR was from July 21, 2012. [*Id.* at 16]. He stated that the constant rebooting issue was system wide and not simply with the locomotive at issue. [*Id.* at 10].

Mastrangelo further testified that the DVR was removed from the locomotive on October 29, 2016, by J.D. Bartko, a claims agent. [*Id.* at 5]. He stated that Bartko could have downloaded the data if he had a laptop, but he did not download it. [*Id.* at 6]. Mastrangelo testified that when the DVR was taken to the lab, it was still having booting issues, so he started quality assurance. [*Id.* at 12]. He turned off the rebooting process in order to determine what was wrong with the software. [*Id.* at 9]. As Mastrangelo explained:

> So the data file that I retrieved from the DVR in this particular case, which was under that it says, last good video. So the very last thing that was recorded on that DVR before it started rebooting and not recording any more data to the DVR, I recorded—I retrieved about the last 15 minutes or so of data to show what was going on prior to it to the time it stopped recorded. So that was the file name that I retrieved as the last good video. The date that I did it was 10/31/16. And the data was not posted to the claims. It was just archived and preserved in the packet.

[*Id.* at 13]. He continued:

> If you look all the way to the bottom at Item No. 40 it says, recorded test clip as it record. Play back the record. It says, yes. So once I was able to get the DVR's directories to build, once I waited the seven minutes, the last thing that we did, or I did, was see if it would record data. And it did.

[*Id.* at 14].

Plaintiff argues that after he and his experts performed the inspection in Roanoke, Virginia, they had questions regarding the test clip that Mastrangelo made after the incident. Specifically,

7

Plaintiff stated that he wanted to know whether Mastrangelo's manipulation affected the DVR. First, Plaintiff had the opportunity to fully question Mastrangelo about this topic. In addition, as defense counsel explained at the hearing, Mastrangelo's test clip did not affect the native DVR. Mastrangelo testified that when storage is low either on the hard drive or the flash card, the data wraps, meaning that the new data will be rewritten over the oldest data. Given that the most recent viewable data on the DVR was 2012, it is clear that Mastrangelo's test clip did not affect the DVR or any subsequent recordings on the DVR. In addition, Plaintiff claims that Defendant has an administrative tool to work with the bin video files. Plaintiff did not provide any details as to the administrative tool, and Mastrangelo testified that the bin files are retrieved from the DVR using RailView software. [Doc. 59 n. 1], *see generally* [Doc. 54-1].

In support of his request, Plaintiff also asserts that Defendant represented to the Court that the Leidos's software is proprietary. For instance, Plaintiff states that Defendant did not mention that it and Mastrangelo were instrumental in the testing and implementation of RailView. Plaintiff also asserts that Defendant used tax-payer money to equip its locomotives with RailView. The Court finds such arguments irrelevant to the issues in this case, including the alleged spoliation of evidence. Further, it was Leidos that took the position that its software was proprietary and contained human readable software. Accordingly, the Court finds that Plaintiff's additional discovery requests constitute a fishing expedition and that Defendant has shown good cause for a protective order.

> **B.** **Defendant's Motion for Enforcement of the Trial Witness Disclosure Deadline and Issuance of a Protective Order Quashing Plaintiff's Untimely 30(b)(6) Deposition Notice to Norfolk Southern With Request for Expedited Hearing [Doc. 56]**

The Court has considered the parties' positions, and for the reasons explained below, the Court finds Defendant's Motion [Doc. 56] not well taken.

As mentioned above, Defendant seeks to quash Plaintiff's Rule 30(b)(6) notice. Defendant complains that the final witness deadline expired on November 18, 2019, and that Plaintiff served a Rule 30(b)(6) witness deposition notice four days later on November 22, 2019. As mentioned above, Rule 26(c) states, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Because Defendant seeks the protective order, it is Defendant's burden to show good cause. *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. at 549.

The Court finds that Defendant has not established good cause for a protective order. Defendant claims that Plaintiff's Rule 30(b)(6) is part of an ambush tactic because Plaintiff never disclosed the specific categories of information that he now seeks and that Plaintiff's silence led Defendant to believe that Plaintiff was not pursuing a negligence per se case. The Court finds Defendant's argument to be a non-starter.

First, Plaintiff pleads negligence per se in his Complaint. *See* [Doc. 1 at 2] ("Arnold brings this claim for Norfolk Southern's negligent violations of its rules, federal regulations including but not limited to 49 C.F.R. Ch. II, and other negligent and negligence per se conduct violating the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51-60 et seq. . ."). He further pleads negligence per se for Defendant failing to sound the horn at several points, for traveling at excessive speeds, for entering conditional limits, failing to communicate, and for failing to make sure the tracks were clear. [*Id.* at ¶ 35]. These allegations are similar to the topics noticed for the Rule 30(b)(6) deposition. [Doc. 56-1].

Further, Plaintiff lists a Rule 30(b)(6) witness on his initial disclosures [Doc. 64-1 at 3]. While he did not include specific topics of information for the Rule 30(b)(6) witness in his initial disclosure, Plaintiff only has a duty to supplement "if the additional or corrective information has

9

not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Here, Plaintiff's Rule 30(b)(6) notice provided Defendant with the notice required under the Rule. Further, the Court does not find Plaintiff's Rule 30(b)(6) witness notice to be untimely as it was served and scheduled before the discovery deadline. While Plaintiff did not include a specific name for the Rule 30(b)(6) witness on the final witness list, the Court notes that it is Defendant's choice of who to designate, and Plaintiff is allowed to supplement his witness list with leave of Court and for good cause shown. [Doc. 23 at 2].

In addition, Defendant argues that Plaintiff has already had an opportunity to explore the categories of inquiry at great length, given the number of employees who have already testified about regulatory compliance. It is well established, however, "A Rule 30(b)(6) witness differs from a 'mere corporate employee' because, unlike an individual witness, the testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation and testimony under the rule binds the corporation." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019) (citing *White v. Wal-Mart Stores E., L.P.*, No. 518CV00034TBRLLK, 2018 WL 5083891, at *3 (W.D. Ky. Oct. 18, 2018); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018)). Therefore, "prior deposition testimony from individual fact witnesses does not relieve a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition." *Id.* (quoting *Majestic Bldg. Maint.*, 2018 WL 3358641 at *12).

Defendant argues that Plaintiff should have issued the Rule 30(b)(6) notice earlier in the litigation, but the Court agrees with Plaintiff that Rule 26(d) specifically states that the "methods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3)(A).

Further, Defendant argues that the Rule 30(b)(6) notice is facially designed to have a witness testify about the law. The Court disagrees. Defendant conducts business in a highly-regulated field. The deposition notice simply requests information regarding Defendant's own programs for complying with certain regulations. Such inquiries are factual inquiries and are permissible. *See also Lessert v. BNSF Ry. Co.*, No. 5:17-CV-05030-JLV, 2019 WL 3431282, at *4 (D.S.D. July 30, 2019) (explaining that railroad defendant's interpretation and implementation of the Roadway Worker Protection regulations are relevant to plaintiff's allegations that defendant failed to follow such regulations and that defendant cites no authority for its position that it is improper for plaintiff to depose defendant about its interpretation or applicability of federal law). Accordingly, the Court finds Defendant's arguments not well taken.

### III. CONCLUSION

Accordingly, for the reasons explained above, the Court **GRANTS** Defendant's Motion for Protective Order [**Doc. 54**] and **DENIES** Defendant's Motion for Enforcement of the Trial Witness Disclosure Deadline and Issuance of a Protective Order Quashing Plaintiff's Untimely 30(b)(6) Deposition Notice to Norfolk Southern with Request for Expedited Hearing [**Doc. 56**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge